—NOT FOR PUBLICATION—                    JS-6

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. CV 09-06184 DMG |
| 450 S. BURLINGTON PARTNERS, LLC, | **ORDER RE BANKRUPTCY APPEAL** |
| Debtor, | |
| | |
| KATHLEEN P. MARCH, et al., | |
| Appellants, | |
| v. | |
| 450 S. BURLINGTON PARTNERS, LLC, | |
| Appellee. | |
| | Bankruptcy No. LA 09-15319 SB |

This matter is before the Court on an appeal from the Bankruptcy Court's August 6, 2009 Sanctions Order.  The Court deems this matter suitable for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 8012-7.  For the reasons set forth below, the decision of the Bankruptcy Court is REVERSED.

—NOT FOR PUBLICATION—

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.      The Underlying Chapter 11 Bankruptcy Case**

Debtor 450 S. Burlington Partners, LLC owns an undivided 55% interest in a 17-unit residential apartment building located in Los Angeles, California ("Property").[1] (Sanctions Order, Excerpt of Record ("E.R.") Ex. 2 at 2.)  Joseph Kurn purportedly has an undivided 45% interest in the Property.  (*Id.*)  Kurn claims his undivided interest is as a tenant-in-common or, in the alternative, as a secured creditor.  (Tr. of April 28, 2009 Hr'g re Cash Collateral Order ("Tr. of April 28 Hr'g"), E.R. Ex.12 at 5–6.)  The only evidence of the purported tenant-in-common or secured creditor interest is a grant deed. (Sanctions Order, E.R. Ex. 2 at 2.)   Neither party has provided a tenant-in-common agreement or a partnership agreement to the Bankruptcy Court.  (*Id.*)   In 2006, Debtor and Kurn signed "Amendment #1 to Tenant in Common Agreement" ("Amendment #1"), requiring Debtor to pay Kurn approximately $1,625 per month.[2]  (*Id.*)  Debtor complied with the terms of Amendment #1 for approximately three years, until commencing the underlying bankruptcy proceeding.  (*Id.*)

Debtor filed for Chapter 11 bankruptcy on March 10, 2009.  (Sanctions Order, E.R. Ex. 2 at 2.)  Debtor subsequently filed a motion requesting initial authorization to use cash collateral.  (*Id.*)  Over Kurn's opposition, the Bankruptcy Court authorized Debtor's initial use of cash collateral through April 30, 2009.  (*Id.*)  Kurn specifically opposed Debtor's use of cash collateral unless Debtor paid Kurn approximately $1,625 per month from Debtor's gross proceeds pursuant to the purported tenant-in-common agreement. (*Id.*)

---

[1] Appellants refer to the Property as having 18 units.  (Appellants' Opening Br. at 1, 3).  All other motions and orders in the record refer to the Property as having 17 units.

[2] A copy of Amendment #1 is included in the Excerpt of Record.  (Kurn's Opp'n to Debtor's Mot. for Continued Use, E.R. Ex. 19 at 27–28.)

—NOT FOR PUBLICATION—

**B.**    **The Bankruptcy Court Order Authorizing Continued Use**

On April 28, 2009, the Bankruptcy Court heard oral arguments on a second cash collateral motion ("April 28 hearing"), following which the court orally announced its ruling, approving Debtor's use of cash collateral through July 31, 2009.  (Order for Continued Use, E.R. Ex. 4 at 1.)  On April 30, 2009, the Bankruptcy Court issued Supplemental Conclusions ("Supplemental Conclusions") to its April 28 order, finding that Kurn was entitled to a portion of the net profits, not gross profits, pursuant to the default rule under *Dabney-Johnston Oil Corp. v. Walden*, 4 Cal. 2d 637 (1935). (Supplemental Conclusions, E.R. Ex. 5 at 2.)  The Bankruptcy Court disagreed with Appellants' position that Kurn was entitled to 45% of the gross profits (rent in the Property) under *Dabney-Johnston*.  (*Id*. at 1.)  Rather, the Bankruptcy Court found *Dabney-Johnston* to stand for the proposition that Kurn's purported entitlement to a 45% interest in the Property revenue is subject to a charge or deduction for Debtor's operational expenses, and "[u]nder the budget approved by the court, these expenses are projected to use all of the revenue in rents received by the debtor."  (*Id*. at 2.)

In its Supplemental Conclusions, the Bankruptcy Court made several other observations.  (*Id*.)  First, it noted that while there is an exception under *Dabney-Johnston*, allowing co-tenants to contract around the default rule, the exception did not apply to Kurn because Kurn failed to establish the parties had contracted around the rule. (*Id*.)  Appellants contend—in previous motions and in this appeal—that the exception did apply because Debtor and Kurn did in fact contract around the default rule in the tenant-in-common agreement.  (*Id*.; *see also* Appellants' Opening Br. at 7.)

The Bankruptcy Court also observed:

It may be that Kurn is entitled to a 45% share of the net profits from the rents received from the real estate involved in his case.  This is not the time in this chapter 11 case for such owners to receive distributions from this bankruptcy estate.  Payment to a co-owner of the real estate here at issue must await the generation of net profits.

-3-

—NOT FOR PUBLICATION—

Insofar as Kurn contends that his status is that of a secured creditor, his interest in rents received from the real estate is limited by [11 U.S.C.] § 552, which provides that "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before commencement of the case."  While [11 U.S.C.] § 552(e)[3] [sic] provides certain exceptions to this rule, Kurn has not shown that he qualifies for any such exception.

(Supplemental Conclusions, E.R. Ex. 2 at 2.)

## C.  **Appellants' Motion To Reconsider**

On May 7, 2009, Appellants, on Kurn's behalf, filed a motion to reconsider the cash collateral order and Supplemental Conclusions.[4]  (Mot. to Reconsider, E.R. Ex. 28.) The Bankruptcy Court heard oral arguments on Kurn's motion on June 2, 2009, at which time the Bankruptcy Court denied the motion in its entirety.  (Tr. of Hr'g on June 2, E.R. Ex. 11 at 12–14.)   Specifically, the Bankruptcy Court denied the motion because Appellants did not present any new facts or new evidence that were not previously available to the court when it ruled on the cash collateral motions.  (*Id*.)  The oral ruling was reflected in a written ruling issued on July 2, 2009.  (Order Denying Mot. to Reconsider, E.R. Ex. 3.)

## D.  **The Bankruptcy Court's Sanctions Order**

On June 23, 2009, Debtor filed a motion seeking sanctions against both Kurn and Appellants pursuant to 11 U.S.C. § 105 and Federal Rule of Bankruptcy Procedure 9011.[5]

---

[3]  The Bankruptcy Court and Appellants reference 11 U.S.C. § 552(e) on several occasions. Presumably, they intended to refer to 11 U.S.C. Section 552(b), as 11 U.S.C. § 552(e) does not exist.

[4]  Appellants' motion to reconsider also included a motion for the presiding Bankruptcy Judge to recuse himself from the proceedings.  (Mot. to Reconsider, E.R. Ex. 28.)

[5]  Debtor's sanctions motion requested $13,675.38 in total fees and expenses and included a breakdown of the fees and costs with respect to defending against Appellants' motion to reconsider (approximately $8,095) and bringing the sanctions motion (approximately $5,580).  (Decl. of Anthony J. Napolitano in Support of Debtor's Mot. Seeking Sanctions, E.R. Ex. 32 at 3, 9–10.)

—NOT FOR PUBLICATION—

(Sanctions Order, E.R. Ex. 2 at 3.)   Debtor argued that Kurn's motion to reconsider needlessly increased Debtor's litigation costs and wasted the court's time because it was frivolous and merely rehashed Kurn's opposition to the cash collateral motion.  (Debtor's Mot. Seeking Sanctions, E.R. Ex. 31.)

The Bankruptcy Court held a hearing on Debtor's sanctions motion on July 14, 2009.  (Tr. of Hr'g on July 14, 2009, E.R. Ex. 9.)  On August 6, 2009, the Bankruptcy Court issued the Sanctions Order at issue here:

> Under the facts of this case, the court finds that Joseph Kurn and his counsel [Appellants] . . . filed [their] motion [to reconsider] in bad faith.  Pursuant to 11 U.S.C. § 105(a) and the court's inherent authority, the court orders that Kurn and his counsel pay sanctions to the debtor . . . in the amount of $10,000:  $5,000 of this payment is due to counsel of record for the debtor thirty days from the date of entry of this order; the remaining $5,000 is suspended, pending further decision of this court.

(Sanctions Order, E.R. Ex. 2 at 1.)  With respect to its inherent authority, the Bankruptcy Court found as follows:

> Kurn and his counsel filed the reconsideration motion in bad faith.  The voluminous motion lacked any new facts or new competent evidence and made no new arguments not previously made to the court.  In addition to causing detriment to debtor, Kurn's filing unnecessarily drained the court's time and resources.

(*Id*. at 4.)  With respect to Section 105(a), the Bankruptcy Court found that "Kurn and his counsel filed a frivolous reconsideration motion, which constitutes a violation of the integrity of the bankruptcy process."  (*Id*. at 6.)

## II.

## <u>STANDARD OF REVIEW</u>

A reviewing court will not disturb the bankruptcy court's entry of sanctions unless the bankruptcy court abused its discretion.  *See In re S. Cal. Sunbelt Developers, Inc.*,

—NOT FOR PUBLICATION—

608 F.3d 456, 461 (9th Cir. 2010) (citing *Higgins v. Vortex Fishing Sys., Inc.*, 379 F.3d 701, 705 (9th Cir. 2004)).  A court abuses its discretion if its decision is based on "an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Holgate v. Baldwin*, 425 F.3d 671, 675 (9th Cir. 2005) (citing *Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC*, 339 F.3d 1146, 1150 (9th Cir. 2003)).

Before awarding sanctions under its inherent powers, the Bankruptcy Court is required to make an explicit finding that counsel's conduct "constituted or was tantamount to bad faith."  *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980)); *see also In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996); *United States v. Stoneberger*, 805 F.2d 1391, 1393 (9th Cir. 1986).

### III.

### DISCUSSION

Appellants contend that the Sanctions Order was erroneous for three reasons:  (1) the Bankruptcy Court erroneously relied on Section 105(a) and its inherent power in issuing the Sanctions Order; (2) Appellants' motion to reconsider was meritorious; and (3) the Bankruptcy Court improperly issued the Sanctions Order to chill Appellants' future advocacy of the underlying bankruptcy case.  (Appellants' Opening Br. at 19–20.) The Court considers each contention in turn.

**A.**    **The Bankruptcy Court Had Authority To Issue Sanctions**

Debtor moved the Bankruptcy Court to order sanctions under Section 105(a) and the Federal Rules of Bankruptcy Procedure ("FRBP") 9011.  (Sanctions Order, E.R. Ex. 2 at 3.)   The Bankruptcy Court issued the Sanctions Order pursuant to its statutory authority under Section 105(a) and its inherent sanction authority; it did not rely on FRBP 9011.[6]  (*Id*.)  Appellants first argue that the Bankruptcy Court erroneously relied on

---

[6] As an initial matter, Appellants assert that the Bankruptcy Court was precluded from relying on FRBP 9011 to issue the Sanctions Order because Debtor failed to comply with the requisite "safe harbor" provision.   (Appellants' Opening Br. at 32–33.)   The Bankruptcy Court previously

—NOT FOR PUBLICATION—

Section 105(a) because Section 105(a) only allows the court to sanction a party when the party violates a specific court order.  (*Id*. at 33–36.)   Appellants next argue that the Bankruptcy Court erroneously relied on its inherent sanction authority because that authority is limited to bad faith conduct that is not sanctionable under some other code section or rule.  (*Id*. at 36.)  Specifically, Appellants argue that (1) filing the motion to reconsider did not rise to the requisite level of bad faith; and (2) even assuming bad-faith conduct, the Bankruptcy Court improperly relied on its inherent power to sanction because such power should be reserved for those instances when the conduct cannot be adequately sanctioned under the rules.  (*Id*.)

###### 1.    The Bankruptcy Court's Authority To Issue Sanctions

A bankruptcy court has the express power to impose sanctions pursuant to FRBP 9011 and Section 105(a).  *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 283–84 (9th Cir. 1996).  A bankruptcy court, like Article III courts, has inherent sanction authority.  *Id*. at 284; *see also In re Lehtinen*, 564 F.3d 1052, 1058 (9th Cir.), *cert. denied*, 130 S.Ct. 739, 175 L.Ed.2d 515 (2009).

Here, the Bankruptcy Court's Sanctions Order relied on both its statutory authority under Section 105(a) and its inherent sanctions authority.  These two authorities are not interchangeable.  *In re Dyer*, 322 F.3d 1178, 1196 (9th Cir. 2003).  Section 105(a) "allows a court to remedy a violation of a specific order . . . .  The inherent sanction authority allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics."  *Id*. (citing *Fink v. Gomez*, 239 F.3d 989, 992–93 (9th Cir. 2001).

---

acknowledged that Debtor failed to comply with the safe harbor provision and consequently did not rely on FRBP 9011 in issuing the Sanctions Order.  (Tr. of Hr'g on July 14, 2009, E.R. Ex. 9 at 60.)

-7-

—NOT FOR PUBLICATION—

### 2.    The Bankruptcy Court Improperly Exercised Its Statutory Authority To Sanction Under Section 105(a)

Section 105(a) is a civil contempt authority that "allows a court to remedy a violation of a specific order." *In re Dyer*, 322 F.3d at 1195. "The standard for finding a party in civil contempt is well settled:  The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court.  The burden then shifts to the contemnors to demonstrate why they were unable to comply." *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002) (quoting *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999)).

The Bankruptcy Court found that Appellants filed the motion to reconsider in bad faith because "[t]he voluminous motion lacked any new facts or new competent evidence and made no new arguments not previously made to the court."  (Sanctions Order, E.R. Ex. 2 at 4.)  The Bankruptcy Court erred to the extent it relied directly on Section 105(a) because Debtor failed to establish by clear and convincing evidence that Appellant violated a specific and definite order.  *See In re Bennett*, 298 F.3d at 1069 (setting forth the standard for a bankruptcy court to sanction a party pursuant to its civil contempt authority under Section 105(a)).  Nonetheless, as discussed below, the Bankruptcy Court could rely on its inherent sanction authority to impose sanctions, provided that it made adequate findings.

### 3.    Nothing Precluded The Bankruptcy Court From Exercising Its Inherent Authority

A bankruptcy court has the inherent power to sanction bad-faith conduct in the litigation before it.  *In re Dyer*, 322 F.3d at 1196.  This inherent authority is recognized in Section 105(a), which states:

> No provision of [the Bankruptcy Code] providing for the raising of an issue
> by a party in interest shall be construed to preclude the court from, sua
> sponte, taking any action or making any determination necessary or

—NOT FOR PUBLICATION—

appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).  By granting bankruptcy courts authority to "issue orders necessary 'to prevent an abuse of process,' Congress impliedly recognized that bankruptcy courts have the inherent power to sanction that . . . exists within Article III courts." *Rainbow Magazine*, 77 F.3d at 284.

Inherent sanction authority is wide in scope and powerful in effect, and therefore courts should exercise it with discretion and restraint. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).  "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id*.  Accordingly, a court must make an explicit finding of bad faith or willful misconduct. *Dyer*, 322 F.3d at 1196; *see also Primus Auto.*, 115 F.3d at 649 ("We insist on the finding of bad faith because it ensures that 'restraint is properly exercised' and it preserves a balance between protecting the court's integrity and encouraging meritorious arguments." (citation omitted; quoting *Zambrano v. City of Tustin*, 885 F.2d 1473, 1478 (9th Cir. 1989))).

A court reasonably finds bad-faith conduct where an attorney "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purposes of harassing an opponent."  115 F.3d at 649 (citations omitted).  A court is also justified in finding bad-faith conduct if it finds that a party is "delaying or disrupting the litigation or hampering enforcement of a court order." *Id*. (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)).  Additionally, the court may find bad-faith conduct and impose sanctions "against counsel who willfully abuse judicial processes." *Fink*, 239 F.3d at 991.

Appellants argue that the Bankruptcy Court improperly exercised its inherent sanction authority for two reasons.  First, Appellants maintain that Debtor did not move for sanctions under the Bankruptcy Court's inherent authority.  (Appellants' Opening Br. at 32.)  Second, Appellants contend that the Bankruptcy Court relied on its inherent

—NOT FOR PUBLICATION—

sanction authority only because Debtor's failure to comply with FRBP 9011's safe harbor requirement precluded the court from relying on FRBP 9011.  Thus, Appellants reason, the court's resort to its inherent authority constituted an improper "end run" around FRBP 9011's procedural requirements.[7]  (*Id*.)  Appellants' position misconstrues the purpose of judicial inherent sanction authority.  A bankruptcy court may exercise its inherent sanction authority *sua sponte*, and it "can be invoked even if procedural rules exist which sanction the same conduct."  *Chambers* 501 U.S. at 49.  "[N]othing . . . warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct."  *Id*. at 50.  "[N]either is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or Rules."  *Id*.  As such, upon an explicit finding of bad-faith conduct, the Bankruptcy Court could properly exercise its inherent authority *sua sponte*, notwithstanding Debtor's failure to move the court to do so.  Moreover, the Bankruptcy Court's inability to rely on FRBP 9011—due to Debtor's failure to comply with the procedural safe harbor requirements—did not foreclose the Bankruptcy Court from exercising its inherent sanction authority.

Therefore, the Court finds no reason *per se* why the Bankruptcy Court could not have exercised its inherent authority to sanction Appellants.  The Court now considers whether the exercise of inherent authority was proper, *i.e.*, whether the Bankruptcy Court erred in finding bad-faith conduct.

---

[7] Appellants state in their opening brief:  "[During the hearing on the sanctions motion], Debtor's counsel asked the Court to use Section 105 and the court's inherent power to sanction . . . .  [T]he Bankruptcy Court responded that it was **troubled** with the idea . . . because doing so would be an end run on the 'safe harbor' provisions of Rule 9011."  (Appellants' Opening Br. at 33 (emphasis in original).)  Appellants' opening brief suggests that the Bankruptcy Court was troubled with exercising inherent sanction authority under the circumstances.  Considering the Bankruptcy Court's comments in context, however, the hearing transcript indicates that the Bankruptcy Court was merely concerned about exercising FRBP 9011 sanction authority due to the safe harbor procedural defect.  (*See* Tr. of Hr'g re Debtor's Sanctions Mot., E.R. Ex. 9 at 39.)

—NOT FOR PUBLICATION—

**B.** **The Bankruptcy Court Did Not Err In Denying the Motion For Reconsideration**

Appellants contend that the motion to reconsider was meritorious because it contained new evidence not available at the time the Bankruptcy Court issued the cash collateral orders and because the Bankruptcy Court issued the cash collateral orders based on clear errors of fact and law.  (Appellants' Opening Br. at 21–22.)

### 1.   Legal Standard

Reconsideration motions in bankruptcy proceedings are governed by Federal Rule of Civil Procedure ("FRCP") 60 via FRBP 9024.[8]  FRCP 60(b) states in pertinent part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1)   *mistake*, inadvertence, surprise, or excusable neglect; [or]
>
> (2)   *newly discovered evidence* . . . .

Fed. R. Civ. P. 60(b) (emphasis added).

### 2.   Discussion

#### a.   Whether Appellants Presented New Evidence

Appellants argue that the motion to reconsider was meritorious because it offered new evidence.  (Appellants' Opening Br. at 23–25.)  The purported new evidence was Debtor's Chapter 11 Status Report, which Debtor filed with the Bankruptcy Court shortly

---

[8] Appellants also argue that the motion to reconsider was meritorious under FRCP 59 via FRBP 9023 and Local Bankruptcy Rule ("LBR") 9013-4(a).  (Appellants' Opening Br. at 21.)

Under FRCP 59, a court may, "on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment."  Fed. R. Civ. P. 59(a)(2).  LBR 9013-4(a) provides examples of sufficient grounds for a motion for a new trial, a new hearing in a contested matter, or amendment of judgment pursuant to FRBP 9023 or FRCP 59(a).  Bankr. C.D. Cal. R. 9013-4(a).

An FRCP 59 motion is triggered by entry of a judgment.  *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment [under this rule] must be filed no later than 28 days after the entry of judgment.").  Because the Bankruptcy Court did not enter any judgments with respect to the cash collateral orders, the Court construes Appellants' reconsideration motion as a Rule 60(b) motion.

—NOT FOR PUBLICATION—

1  after the April 28 hearing.  (*Id.* at 23.)   The report indicated that Debtor had
2  approximately $33,000 in net profits at the end of the 2008 calendar year.   (*Id.*)
3  Appellants acknowledge that the report was not new evidence because it was included in
4  Debtor's cash collateral motion, which was served on Appellants on March 23, 2009.
5  (*Id.* at 23–24.)  Appellants contend therefore that (1) either the report was new evidence,
6  (2) or if it was not new evidence, the Bankruptcy Court committed an error of fact in
7  finding Debtor had no net profits.  (*Id.* at 24.)  Appellants' arguments, however, fail on
8  both counts.

9       To show the report was new evidence under FRCP 60(b), Appellants must prove
10  the evidence (1) existed at the time of the April 28 hearing, (2) could not have been
11  discovered through due diligence in time for the April 28 hearing, and (3) and was "of
12  such magnitude that production of it earlier would have been likely to change the
13  outcome." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992–93 (9th Cir. 2001).

14       On March 23, 2009, Appellant received the relevant information contained in the
15  report—namely, that Debtor had approximately $33,000 in net profits at the end of the
16  2008 calendar year—in a declaration filed together with Debtor's cash collateral motion.
17  (Decl. of Brett H. Daniels in Support of Debtor's Cash Collateral Motion, E.R. Ex. 17.)
18  Debtor served Appellants with this declaration more than 30 days before the April 28
19  hearing, and therefore Appellants cannot establish that the evidence could not have been
20  discovered in time for the April 28 hearing.  As such, the Bankruptcy Court did not err in
21  finding that the report did not constitute new evidence.

22       Moreover, the Bankruptcy Court did not clearly err in finding that Debtor had no
23  net profits.  During the April 28 hearing on Debtor's second cash collateral motion, the
24  Bankruptcy Court noted that the net expenses in Debtor's cash flow budget are mere
25  estimates because net expenses vary from month to month and depend on various
26  incurred expenses.  (Tr. of April 28, E.R. Ex. 12.)  Following similar reasoning, at the
27  time of the April 28, 2009 hearing, nearly five months had elapsed since the 2008 net
28  profits determination, and Debtor's expenses and circumstances had likely changed,

—NOT FOR PUBLICATION—

particularly in light of the fact that Debtor filed for bankruptcy in the interim.  As such, Debtor's 2008 net profits do not demonstrate conclusively that net profits existed at the time of the April 28 hearing, and the Bankruptcy Court did not abuse its discretion in making a factual finding to the contrary.

> **b.    Whether The Parties Contracted Out Of The *Dabney-Johnston* Default Rule**

Appellants assert that the motion to reconsider was meritorious because the Bankruptcy Court committed an error of fact and law in finding that the *Dabney-Johnston* default rule applied.   (Appellants' Opening Br. 25–27.)   Specifically, Appellants argue that the Bankruptcy Court committed an error of fact because the purported tenant-in-common agreement and Amendment #1 were sufficient to show that the parties contracted out of the *Dabney-Johnston* default rule.  Appellants claim that the Bankruptcy Court committed an error of law because, had the Bankruptcy Court recognized that the default rule did not apply, then Kurn would have been entitled to 45% of the cash collateral.  (*Id*. at 26–27.)

The Bankruptcy Court, however, did not clearly err in finding that the parties had not contracted out of the *Dabney-Johnston* default rule.  As discussed, *supra*, neither party provided the actual tenant-in-common agreement to the Bankruptcy Court. (Sanctions Order, E.R. Ex. 2 at 2.)  The Bankruptcy Court weighed the evidence before it, namely, Amendment #1 and conflicting declarations regarding the existence and contents of the purported tenant-in-common agreement.  The Bankruptcy Court did not commit error in holding that the *Dabney-Johnston* default rule applied because there was insufficient evidence to find that the parties did in fact contract around the default rule. The Bankruptcy Court's refusal to credit Appellants' contention that the Debtor was guilty of despoliation of evidence also is not clearly erroneous because the purported evidentiary basis—the declaration of Robert Torres (E.R. Ex. 33 at 26-27)—was not in the record at that time.  Given its conclusion that the default rule applied, the Bankruptcy Court did not err in finding that Kurn was not entitled to 45% of the cash collateral.

-13-

—NOT FOR PUBLICATION—

### c.     Whether Kurn Qualified For The Section 552(b)(1) Exception

Appellants argue the Bankruptcy Court erred in ruling that Kurn did not qualify for an exception under 11 U.S.C. § 552(b).  (Appellants' Opening Br. at 27.)  The general rule under the statute is as follows:

> [P]roperty acquired . . . by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

11 U.S.C. § 552(a).  In other words, when the security interest-holder acquires his lien before the debtor files for bankruptcy, any property the debtor acquires after filing for bankruptcy—here, the rent on the Properties—is not subject to that lien.  The statute provides an exception to the general rule, allowing after-acquired property to be subject to the lien if the parties accounted for it in the security agreement:

> [I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property . . . then such security interest extends to such rents . . . acquired by the estate after the commencement of the [bankruptcy] case to the extent provided in such security agreement, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(2).  Appellants contend they provided sufficient evidence to demonstrate that Kurn qualified for the Section 552(b)(2) exception.  (Appellants' Opening Br. at 27.)  Appellants do not clearly specify the bases for this argument.  Presumably, however, based on the record, Appellants assert that the purported tenant-in-common agreement—together with the various declarations Appellants provided attesting to the existence and contents of that agreement—and Amendment #1 constituted sufficient evidence to find that Debtor and Kurn entered into a security agreement that falls under the Section 552(b)(2) exception.

-14-

—NOT FOR PUBLICATION—

1    The Bankruptcy Court, again, did not abuse its discretion in finding that Section

2    552(b)(2) did not apply.  Neither party provided the actual tenant-in-common agreement

3    to the Bankruptcy Court.  (Sanctions Order, E.R. Ex. 2 at 2.)  The Bankruptcy Court

4    weighed the evidence before it and did not clearly err in finding that there was

5    insufficient evidence of the existence of a security agreement in which the parties agreed

6    the lien extended to Debtor's after-acquired property.  Because there was not clear error

7    in the Bankruptcy Court's finding that Section 552(b)(2) did not apply, the Bankruptcy

8    Court did not err in determining that Kurn was not entitled to 45% of the cash collateral.

9         **d.    Whether An Evidentiary Hearing Was Necessary To Determine**

10              **The Existence Of A Tenant-In-Common Agreement**

11   Appellants maintain that the Bankruptcy Court erred by failing to hold an

12   evidentiary hearing to resolve the conflict between the parties' declarations as to the

13   existence and contents of the tenant-in-common agreement.  (Appellants' Opening Br. at

14   27–29.)  Kurn's declaration stated that the purported tenant-in-common agreement

15   required Debtor to pay Kurn $1,625 per month, before paying out any other expenses.

16   (Kurn Decl., E.R. Ex. 19 at 18–20.)  Declarations in support of Debtor's position stated

17   that the purported tenant-in-common agreement did not exist.  (Spector Decl., E.R. Ex.

18   22 at 26–27.)  The Bankruptcy Court did not, however, abuse its discretion in not holding

19   an evidentiary hearing to resolve the conflict between the parties' declarations as to the

20   existence and content of the alleged tenant-in-common agreement.

21   To support their position in their reconsideration motion, Appellants relied on out-

22   of-circuit authority, which states:  "Where resolution of the motion to dismiss turns on

23   credibility . . . the proper exercise of discretion *may* be to hold an evidentiary hearing."

24   (Mot. to Reconsider, E.R. Ex. 28 at 4.) (quoting *Sunseri v. Macro Cellular Partners*, 412

25   F.3d 1247, 1250 (11th Cir. 2005) (emphasis added)).  The very case on which Appellants

26   rely, however, suggests that holding an evidentiary hearing is discretionary, not

27   mandatory.  The relevant local bankruptcy rule confirms that holding an evidentiary

28   hearing is within the court's discretion:

—NOT FOR PUBLICATION—

Factual contentions involved in any motion, opposition or other response to a motion, or reply papers, must be presented, heard, and determined upon *declarations and other written evidence*. . . .

(1)     The court may, *at its discretion* . . . require or allow oral examination of any declarant or any other witness . . . .

Bankr. C.D. Cal. R. 9013-1(i) (emphasis added); *see also* Fed. R. Civ. P. 43(c) ("When a motion relies on facts outside the record, the court *may* hear the matter on affidavits or *may* hear it wholly or partly on oral testimony or on depositions.") (emphasis added). The Bankruptcy Court explained its discretionary decision *not* to hold an evidentiary hearing to Appellants during the hearing on the motion to reconsider:

A motion to use cash collateral at the outset of a case is in . . . [the] nature of a temporary restraining order, that is, it's decided on [a] limited record, because there's a limited amount of time to present evidence to the Court. It's decided on the papers.  It's rare to take testimony on a temporary restraining order, and it's rare to take testimony with respect to a[n] . . . order to use cash collateral.

(Tr. of June 2 Hr'g re Motion to Reconsider, E.R. Ex 11 at 13–14.)  The Bankruptcy Court's decision not to hold an evidentiary hearing was not an abuse of discretion and did not run afoul of the relevant local and federal rules.

## C.     Subsequent Proceedings In The Bankruptcy Court Are Immaterial To The Propriety Of The Sanctions Order

Appellants argue that their position in the motion to reconsider—that Kurn is a secured creditor and entitled to 45% of Debtor's gross proceeds—was ultimately proven correct because Debtor later agreed to Kurn's Chapter 11 Plan, which the Bankruptcy Court approved on July 13, 2010, and which allowed Kurn to sell the property, pay off senior creditors, and then pay himself the remainder of the sale proceeds.  (Appellants' Opening Br. at 29–30.)   Subsequent proceedings in the underlying bankruptcy case, however, are immaterial to the propriety of the Sanctions Order.  The Bankruptcy Court

-16-

—NOT FOR PUBLICATION—

based its Sanctions Order on Appellants' reconsideration motion.  As discussed above, the Bankruptcy Court denied Appellants' reconsideration motion in light of its assessment of the quality of the evidence before it, which was not materially different than what the Court had considered on Appellants' initial motion, and therefore the denial was not an abuse of discretion.  While Kurn may have been deemed a secured creditor as of July 2010 pursuant to the Debtor's agreement, that subsequent development does not change the standard under which the Court reviews the merits of Appellants' 2009 reconsideration motion and Debtor's Sanctions motion.

## D.   **Appellants' Allegations Of "Irregular" Conduct Are Meritless**

Appellants also seek review of the denial of their motion for the Bankruptcy Court to recuse itself from the underlying Chapter 11 bankruptcy case.  (Appellants' Opening Br. at 30–31.)   Appellants allege the underlying case was transferred from Judge Bluebond—the bankruptcy judge who was originally assigned the case—to Judge Bufford for improper reasons.  (*Id.*)   Further, Appellants assert that Judge Bufford was biased against Appellants because he ruled against Kurn on the cash collateral motions.  (Mot. to Reconsider, E.R. Ex. 28 at 10.)  While the Bankruptcy Court did not issue the Sanctions Order based on the recusal portion of the motion, Appellants' allegation that the Bankruptcy Court engaged in irregular conduct nonetheless does not warrant reversal of the Sanctions Order.

The applicable recusal statute states in pertinent part:  "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  The standard for recusal under this statute is whether "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned."  *Pesnell v. Arsenault*, 543 F.3d 1038, 1043 (9th Cir. 2008) (quoting *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th Cir. 1997)) (quotation marks omitted).  The statute asks whether "a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits."  *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008)

—NOT FOR PUBLICATION—

(quoting *In re Mason*, 916 F.2d 384, 385 (7th Cir. 1990)) (quotation marks omitted).  The "reasonable person" is someone who is a well-informed, thoughtful observer—as opposed to someone who is hypersensitive or unduly suspicious.  *Id*.  The standard must not be too broadly construed; otherwise it would become presumptive, mandating recusal "upon the merest unsubstantiated suggestion of personal bias or prejudice."  *Id*. (quoting *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993)).  Recusal under Section 455(a) "is limited by the 'extrajudicial source' factor which generally requires as the basis for recusal something other than rulings . . . by the judge during the course of the trial."  *Id*. at 913–14 (citing *Liteky v. United States*, 510 U.S. 540, 544–46, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)).  Only in the rarest circumstances will judicial rulings constitute a sufficient bias or prejudice to justify recusal:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.

*Liteky*, 510 U.S at 555.  Absent a legitimate reason for recusal, a judge has a strong duty to sit.  *Clemens v. U.S. Dist. Court for Cent. Dist. of Cal.*, 428 F.3d 1175, 1179 (9th Cir. 2005) (*per curiam*) (citing *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995)).

Appellants fail to demonstrate that Judge Bufford's impartiality might reasonably be questioned.  As a preliminary matter, Appellants allege impropriety because Judge Bluebond transferred the case to Judge Bufford pursuant to LBR 1073-1(b) for reassignment of a related case, and Judge Bufford subsequently issued a corrected order, noting the reassignment was proper under LBR 1073-1(f). (Appellants' Opening Brief at 31.)   LBR 1073-1(f) allows a bankruptcy judge to "assign *any* case or adversary proceeding to another judge."   Bankr. C.D. Cal. R. 1073-1(f) (emphasis added).  Appellants suggest that the impropriety lies in the fact that the original reassignment order was in error because Judge Bufford was not presiding over a related case.  (Mot. to Reconsider, E.R. Ex. 28 at 10.)   A court, however, has broad discretion to interpret and

—NOT FOR PUBLICATION—

apply its local rules regarding the assignment of cases.  *United States v. DeLuca*, 692 F.2d 1277, 1281 (9th Cir. 1988); *see also United States v. Torbert*, 496 F.2d 154, 157 (9th Cir. 1974) (noting that a court's application of case assignment rules is a local housekeeping matter "for the internal operation of the . . . court which has 'a large measure of discretion in interpreting and applying it'" (quoting *Lance, Inc. v. Dewco Servs., Inc.*, 422 F.2d 778, 784 (9th Cir. 1970))).  Appellants fail to allege any facts that would suggest Judge Bluebond's original reassignment order and Judge Bufford's order correcting the basis for the reassignment constituted an abuse of discretion.

As for the allegations of partiality based on the cash collateral and factual rulings, Appellants failed to allege facts to support a finding that Judge Bufford's cash collateral rulings displayed a deep-seated favoritism or antagonism that would make fair judgment impossible.  Appellants merely assert general and unsubstantiated allegations of impropriety, none of which give rise to a finding of objective partiality.  Moreover, Appellants do not allege any extrajudicial source of bias or prejudice other than "some relationship between the Court and Debtor's counsel."  (*Id.* at 9.)  Judge Bufford addressed Appellants' allegation during oral arguments on the motion to reconsider:

> [C]ounsel makes a claim of appearance of impropriety which is manufactured out of whole cloth.  That is not sufficient to support a serious claim for appearance of impropriety.  The Court finds that the charge is totally unfounded, that there's no basis for taking action in that respect.
>
> However, entirely voluntarily, I'm happy to disclose all the contacts and connections I have [with] anybody who is related to the Debtor or the Debtor's counsel, or anybody else in this case, and with the sole . . . exception of Ms. March, who used to be a colleague of mine in this court, I have none whatever, and never have.

(Tr. of April 28 Hr'g re Mot. to Reconsider, E.R. 11 at 13.)  Because Appellants' allegations of irregular proceedings and impropriety did not suggest bias or prejudice,

—NOT FOR PUBLICATION—

Judge Bufford was not required to recuse himself.  As such, Appellants' allegations do not warrant reversal of the Sanctions Order.

**E.**     **The Bankruptcy Court's Sanctions Order Is Reversed Because It Was Not Supported By Adequate Findings Of Bad Faith Or Willful Misconduct**

In sum, Appellants' motion to reconsider failed to demonstrate the existence of "new evidence" or that the Bankruptcy Court had denied the underlying motion based on clear errors of fact and law.  Reconsideration motions are not an avenue for re-arguing issues that the court has already decided simply because the losing party disagrees with the court's decision.  *See In re Negrete*, 183 B.R. 195, 197 (9th Cir. BAP 1995) ("Motions for reconsideration which merely revisit the same issues already ruled upon by the trial court, or which advance supporting facts that were otherwise available when the issues were originally briefed, will generally not be granted."); *see also Maraziti v. Thorpe*, 52 F.3d 252, 255 (9th Cir. 1995) (holding that a party's reconsideration motion was properly denied when the motion merely reiterated the arguments the party previously presented to the court).

The Bankruptcy Court stated in the Sanctions Order:

> The voluminous motion [to reconsider] lacked any new facts or new competent evidence and made no new arguments not previously made to the court."

(Sanctions Order, E.R. Ex. 2 at 4.)  While this finding certainly justified the Bankruptcy Court's *denial* of the motion for reconsideration, simply stating the basis for the denial of the underlying motion does not adequately undergird the decision to award sanctions for bad faith or willful misconduct.  Otherwise, every unsuccessful motion would justify the imposition of sanctions.

Overall, the standard for finding bad-faith conduct is high, such that the conduct at issue must be more egregious than mere negligence or recklessness.  *See Dyer*, 322 F.3d at 1196.  In *Chambers*, the court found bad-faith conduct when the party attempted to defraud the court, filed multiple false and frivolous pleadings, and used other oppressive

—NOT FOR PUBLICATION—

tactics to run-up litigation costs for the opposing party.  *Chambers*, 501 U.S. at 34. While Appellants are correct in stating that the conduct at issue does not rise to the level of the bad-faith conduct in *Chambers*, the conduct in *Chambers* is not meant to serve as the minimum threshold for a finding of bad-faith conduct.

Given the congested docket and the limited resources of the courts, the Bankruptcy's Court's frustration with Appellants' regurgitation of previously rejected arguments in their motion for reconsideration is understandable.  Nonetheless, this Court has not found any comparable cases in which a court's exercise of inherent authority to impose sanctions was upheld merely because the sanctioned party filed a single, non-meritorious motion for reconsideration.  The Bankruptcy Court did not make any specific findings that Appellants interposed their reconsideration motion solely to harass the opposing party or the Court.

Nor is there anything in the record to suggest that Appellants brought the reconsideration motion in bad faith.  To the contrary, Appellants submitted the Torres declaration with their opposition to the sanctions motion, in which Mr. Torres stated that he observed the Debtor's managing member viewing and editing and/or deleting the tenant-in-common agreement whose very existence the Debtor denied.  (E.R., Ex. 33 at 26-27.)   This new evidence of potential despoliation of evidence, which supports Appellants' position in their reconsideration motion, was dated April 14, 2009—more than three weeks before Appellants filed the reconsideration motion.   Although Appellants did not submit the declaration to the Bankruptcy Court until after it had ruled on the reconsideration motion, Appellants stated at the sanctions hearing, without contradiction, that this delay was to shield Mr. Torres and his family from potential retaliation.  (*See* Tr. of Hr'g on July 14, 2009, E.R. Ex. 9 at 11:13-24.)   Under these circumstances, there is simply no evidence that Appellants acted in bad faith.

It is for the very reason that the Court's inherent authority to impose sanctions is an awesome power that the Court is required to exercise it with restraint and discretion. *Chambers*, 501 U.S. at 44; *Primus Auto.*, 115 F.3d at 649.   The Bankruptcy Court's

—NOT FOR PUBLICATION—

failure to cite specific facts, aside from those justifying denial of the reconsideration motion, to support its finding of bad faith or willful misconduct renders the Sanctions Order an abuse of discretion.

Furthermore, the Bankruptcy Court abused its discretion in the amount of sanctions it awarded.  As an initial matter, the Bankruptcy Court improperly included Debtor's costs of bringing the sanctions motion in the total sanctions amount imposed on Appellants.  When a court imposes sanctions pursuant to its inherent power, the court "should limit sanctions to the opposing party's more 'direct' costs, that is, the costs of opposing the offending pleading or motion."  *See Sunbelt Developers*, 608 F.3d at 466 (quoting *Lockary v. Kayfetz*, 974 F.2d 1166, 1178 (9th Cir. 1992).  In this case, the Bankruptcy Court awarded $10,000 in sanctions.  Debtor's breakdown of fees and costs apportioned approximately $8,095 for defending Appellant's "offending motion"—the reconsideration motion—and approximately $5,580 for bringing the sanctions motion. (Decl. of Anthony J. Napolitano in Support of Debtor's Mot. Seeking Sanctions, E.R. Ex. 32 at 3, 9–10.).  Because the Bankruptcy Court imposed a $10,000 sanction against Appellant, at least $1,905 is attributed to Debtor's cost of bringing the sanctions motion. As such, the Bankruptcy Court erred in including Debtor's fees and costs for the sanctions motion in calculating the amount of sanctions to impose on Appellants.

Moreover, the Bankruptcy Court failed to provide a reasoned basis for the amount awarded: it failed to explain why it found $10,000 to be an appropriate amount of sanctions—as opposed to, for instance, the $8,095 that Debtor requested for the offending motion; why it suspended $5,000 of the sanctions; and the circumstances that would affect the suspended status of that portion of the award.  The Bankruptcy Court's failure to articulate the basis for its $10,000 figure and suspension of the final award deprives this Court of the ability to conduct a meaningful review of the amount of the award.  As the Court finds that the Sanctions Award is not supported by adequate factual findings of bad faith or willful misconduct and therefore reverses it, there is no need to remand the

matter to the Bankruptcy Court for a more specific statement of reasons justifying the amount of the sanctions.

## V.

## **CONCLUSION**

In light of the foregoing, the decision of the Bankruptcy Court to impose sanctions is REVERSED.

**IT IS SO ORDERED.**

DATED:  June 20, 2011

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE

cc:  U.S. Bankruptcy Court

-23-